997 So.2d 590 (2008)
Cynthia Coleman KESSLER
v.
GREAT WESTERN LIFE & ANNUITY INSURANCE COMPANY.
No. 2008-CA-0378.
Court of Appeal of Louisiana, Fourth Circuit.
October 15, 2008.
*591 D. Michael Dendy, D. Michael Dendy, APLC, New Orleans, LA, for Plaintiff/Appellant.
Gregory J. Walsh, Jonathan C. McCall, Chaffe McCall, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
In this matter involving denial of a claim for life insurance benefits, Plaintiff/Appellee, Cynthia Coleman Kessler ("Mrs. Kessler") appeals from a judgment of the trial court granting summary judgment to Defendant/Appellee, Great-West Life & Annuity Insurance Company ("Great-West"). For the following reasons, we affirm the trial court's judgment.

Relevant Facts
Forrest Kessler ("Mr. Kessler") procured a group policy of life insurance through his employment and later converted the policy to an individual life policy. The policy was issued by Great-West with a benefit amount of $25,000. Premiums on the policy were to be paid quarterly.
Mr. Kessler paid the first payment toward the premium at the time that he converted the policy. Great-West's automated billing system generated a notice that the premium was due and the notice was mailed to Mr. Kessler. Mr. Kessler paid the second payment toward the premium by mail, without issue.
According to Great-West, on January 2, 2001, it sent Mr. Keller a notice that the third quarterly payment would be due on February 1, 2001. This payment was never received by Great-West. The automatic thirty-day grace period contained in policy terms expired in early March, 2001. After the grace period expired, Great-West's automated billing system generated a gratuitous Special Reinstatement Offer that was sent Mr. Kessler giving him an additional twenty-five days to pay the premium. This grace period expired on April 2, 2001 and Great-West did not receive the past-due premium payment by the expiration date. At this time, the policy status was changed in Great-West records to "non-payment."
Mr. Kessler passed away on May 21, 2001. His widow, Mrs. Kessler, subsequently filed a claim for benefits, which Great-West denied on the basis that the policy had lapsed for non-payment. Mrs. Kessler filed suit against Great-West alleging that the insurance policy was not validly terminated and that she was entitled to the proceeds, penalties and attorney's fees.
In March 2005, Mrs. Kessler and Great-West filed cross motions for summary judgment, which were denied by the trial court. Later, after written discovery and depositions had taken place, Great-West reurged its Motion for Summary Judgment arguing that the records of its [IB15] automated system indicated that proper notice pursuant to La. R.S. 22:177 was sent to Mr. Kessler. Great-West supported the motion with an affidavit (the Wilder Affidavit) as well as deposition testimony of three of Great-West's employees who testified that there were no problems with the automated system that generated *592 premium notices, that Great-West always had appellant's proper address in the system, and that Mr. Kessler had received an earlier premium notice at that address since he had paid the second quarterly premium with the enclosed payment coupon.
The trial court found that Great-West had satisfied the requirements set out in La. R.S. 22:177 and granted summary judgment in favor of Great-West, dismissing Mrs. Kessler's claims against it. It is from this judgment that Mrs. Kessler now appeals.

Law & Discussion
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Billes/Manning Architects v. Accountemps, 98-3044 (La.App. 4 Cir. 9/15/99), 742 So.2d 728, 731. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to summary judgment as a matter of law. La.Code Civ. Proc. art. 966(B). Therefore, we must conduct our own thorough review of the record, the arguments, and the relevant law to determine if Great-West satisfied the requirements La. R.S. 22:177, such that Great-West is presumed to have duly notified Mr. Kessler that the premium was due, and thereafter, properly determined that the policy lapsed for non-payment.
The parties agree that La. R.S. 22:177 applies to the life insurance contract at issue in this case. It states:
§ 177 Written notice required before lapsing life policies
No life insurer shall within one year after default in payment of any premium, installment, loan or interest, declare forfeited or lapsed any policy issued or renewed, and not issued upon the payment of monthly or weekly premiums or for a term of one year or less, for non-payment when due of any premium, installment, loan or interest, or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating:
(1) The amount of such premium, installment, loan or interest, or portion thereof due on such policy; and
(2) The place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured or the assignee of the policy if notice of the assignment has been given to the insurer, at the last known post office address of such insured or assignee, postage prepaid by the insurer or any person appointed by it to collect such payment, at least fifteen and not more than forty-five days prior to the date when the same is payable.
No policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice. Any payment demanded by such notice and made within the time limit shall be taken to be full compliance with the requirements of the policy in respect to the time of such payment.
The affidavit of any officer, clerk or agent of the insurer or of anyone authorized to mail such notice that the notice required by this section has been duly addressed and mailed by the insurer issuing such policy, shall be presumptive evidence that such notice has been duly given. No action shall be maintained to recover under a forfeited policy, unless the same is instituted within two years from the day upon which default was made in paying the *593 premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued. This Section shall not apply to group insurance policies. [Emphasis added.]
La. R.S. 22:177 is a forfeiture statute, and thus must be strictly construed. Lester v. Aetna Life Insurance Company, 295 F.Supp. 1208 (W.D.La. 1968), affirmed, 433 F.2d 884 (5th Cir. 1970); Boring v. Louisiana State Insurance Company, 154 La. 549, 97 So. 856 (1923). The purpose of La. R.S. 22:177 is to protect an insured against loss of accrued policy benefits through mere neglect to pay premiums and to give the insured or policy owner a fair chance to meet the obligation to pay a premium when due. Vining v. State Farm Life Insurance Co., 409 So.2d 1306 (La.App. 2 Cir.1982); Lemoine v. Security Industrial Ins. Co., 569 So.2d 1092 (La.App. 3 Cir. 1990).
Great-West based its motion for summary judgment on the language in the first sentence of La. R.S. 22:177 which states in pertinent part that: No life insurer shall within one year after default in payment of any premium ... declare forfeited or lapsed any policy ... unless a written ... notice [is sent], and the language of subsection (2) which provides that the affidavit of any officer, clerk or agent of the insurer or of anyone authorized to mail such notice that the notice required by this section has been duly addressed and mailed by the insurer issuing such policy, shall be presumptive evidence that such notice has been duly given. It is Great-West's position that the affidavit of Ms. LaVerne Wilder ("Ms. Wilder") (attesting to the fact that the premium notices were generated and sent), as well as the deposition testimony of Mrs. Jantunen (that the computer system was functioning properly and had the correct address for Mr. Kessler) and Mrs. Madsen (that GreatWest received no return mail from that address) created a presumption that Great-West sent the proper notice to Mr. Kessler.
In response, Mrs. Kessler argues that the summary judgment should not have been granted to Great-West since there exists a genuine issue of material fact as to whether the premium notice and gratuitous reinstatement offer were actually mailed to Mr. Kessler. She argues that they did not receive the notices and that there must have been a computer glitch or a problem with the Kessler's address in Great-West's system.
After a de novo review of the record and the applicable law, we find that the trial court properly granted summary judgment to Great-West. Great-West's contention that the Wilder affidavit created a presumption that the notice was properly sent to Mr. Kessler pursuant to La. R.S. 22:177 is correct. Ms. Wilder was an Associate Manager for Individual Life Benefits with Great-West. As part of her duties, she was authorized to oversee the administration and sending of notices regarding individual life insurance policies, including the Kessler policy. Ms. Wilder stated in her affidavit that she was familiar with Great-West's mainframe automated administration and billing system, known as IB15, and that the generation and sending of both the Premium Notice and Special Reinstatement Offer to the Kessler's correct address were reflected in the IB15 system's History Event List. Moreover, Great-West's records did not indicate that any of the notices failed to be generated, were sent to the wrong address, or were returned to Great-West. At the hearing on the motion for summary judgment, Mrs. Kessler came forth with no evidence to rebut this presumption.
In this age of computer technology, where it is common for mailings to be *594 computer generated and sent, we find that Great-West's actions, procedures, and records indicating that the notice was generated and sent to the correct address and in a timely fashion are enough to satisfy the requirement of mailing set forth in La. R.S. 22:177. Accordingly, the trial court's judgment granting summary judgment to Great-West was correct and is affirmed.
AFFIRMED.